

FILED
2023 Oct-05 PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **PINNACLE CONSTRUCTORS GROUP, LLC,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **7:23-cv-00865-LSC** |
| **SSC TUSCALOOSA APARTMENTS, LLC, ET AL.,** | ) ) ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **SSC TUSCALOOSA APARTMENTS, LLC,** | ) ) ) | |
| **Counter-Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **7:23-cv-00865-LSC** |
| **PINNACLE CONSTRUCTORS GROUP, LLC and RON MATTHEWS,** | ) ) ) ) | |
| **Counter-Defendants.** | ) | |

**MEMORANDUM OF OPINION**

Before the Court is Counter-Defendant Pinnacle Constructors Group, LLC's (hereinafter "Pinnacle's") Motion to Dismiss or Stay and Compel Arbitration. (Doc. 19.) Also before the Court is Counter-Defendant Ronald Matthews's (hereinafter

1

Matthews's) Motion to Dismiss or Stay and Compel Arbitration. (Doc. 23.) For the reasons provided below, these Motions are DENIED. (Docs. 19, 23.)

## I.    BACKGROUND

On June 30, 2023, Pinnacle filed this action in the Circuit Court of Tuscaloosa County against Scion, SSC Tuscaloosa Apartments LLC d/b/a Lark Tuscaloosa (hereinafter "SSC"), Interstate Roof Systems Consultants, Inc., Walker & Dunlop, LLC ,[1] Fannie Mae, American Builders and Contractors Supply Co., Inc., and fictitious defendants. (Doc. 1.) Scion removed this action on July 3, 2023. (*Id.*) In its Complaint, Pinnacle asserted twelve causes of action and demanded a jury trial. (Doc. 1-1.) Pinnacle acknowledged that there was a binding arbitration agreement in the Façade Restoration and Scope of Work ("SOW"), which is referenced in and incorporated by the underlying Agreement. (*Id.* at 3 n.1; Doc. 3-7; Doc. 3-8.) Pinnacle also acknowledged that SSC had filed a Demand for Arbitration with the American Arbitration Association on June 22, 2023. (Doc. 1-1 at 3 n.1; Doc. 19 ¶ 7.) However, Pinnacle has maintained that it "needed to also file a Complaint in Circuit Court to protect its lien rights." (Doc. 19 ¶ 8.)

On July 26, 2023, SSC answered Pinnacle's Complaint and asserted counterclaims against Pinnacle and Matthews, Pinnacle's CEO and owner (Doc. 3.)

---

[1] Walker & Dunlop was dismissed as a defendant on August 23, 2023 due to the parties' Joint Stipulation of Pro Tanto Dismissal. (Doc. 17.)

Pinnacle and Matthews requested additional time to answer these counterclaims (Doc. 10), which the Court granted (Doc. 11). On August 29, 2023, Pinnacle filed the pending Motion to Dismiss or Stay and Compel Arbitration. (Doc. 19.) Matthews then filed his Motion to Dismiss or Stay and Compel Arbitration on September 11, 2023. (Doc. 23.) Neither Counter-Defendant has answered SSC's counterclaims.

To this point, the parties have litigated this case by conducting multiple Rule 26(f) conferences, preparing and serving discovery, taking part in a telephone conference before the Court, and briefing Motions to Dismiss regarding other defendants. (Doc. 24 at 4–5.) Further, SSC has answered Pinnacle's Complaint and filed counterclaims. (Doc. 3.)

## II.   ANALYSIS

### A. Pinnacle's Motion is due to be denied because Pinnacle has waived the right to arbitration.

The parties do not dispute that this action is governed by the Federal Arbitration Act (FAA), nor do the parties dispute the existence of an arbitration provision within the SOW. Rather, the parties disagree on whether Pinnacle has waived its right to arbitration and whether the forum selection clause within the Agreement trumps the SOW's arbitration clause. Because the Court agrees with SSC that Pinnacle has waived its right to arbitrate, the Court does not discuss the applicability of the forum selection clause.

3

The "determination of whether [a party] waived its right to arbitration, as opposed to whether the contract is void under Alabama law, is controlled solely by federal law." *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).

A party waives its right to arbitration by "substantially participat[ing] in litigation to a point inconsistent with an intent to arbitrate." *Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995); *see also Morgan*, 142 S. Ct. at 174 (holding that a showing of prejudice is not required to find that a party waived the right to arbitration). This is a totality of the circumstances inquiry. *See Davis v. White*, 795 F. App'x 764, 768 (11th Cir. 2020). Arbitration is favored under federal law, and "[t]he party arguing for waiver bears a heavy burden of proof." *Id.* (citing *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018)).

This case presents the unusual situation where a plaintiff has moved to compel arbitration after having already filed a lawsuit regarding the underlying contract. While few cases have presented in this exact posture, one such case is *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507 (11th Cir. 1990), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). In *S & H*, a plaintiff moved to compel arbitration eight months after filing its

4

complaint, and during which time the parties had litigated two motions and taken five depositions. *S & H*, 906 F. 2d at 1514. The Eleventh Circuit held that the plaintiff had waived the right to arbitrate, finding that the plaintiff had acted inconsistently with its arbitration right and that the defendant would be prejudiced by arbitration. *Id.* The Supreme Court later abrogated this case solely on the prejudice analysis. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).

As in *S & H*, it is apparent that Pinnacle has acted inconsistently with its right to arbitrate. Despite its knowledge of the binding arbitration provision, Pinnacle chose to file this lawsuit and then waited approximately two months before demanding arbitration. In that time, SSC filed an answer to Pinnacle's Complaint asserting counterclaims, the parties held planning conferences in anticipation of continued litigation, began discovery, and appeared before this Court in a telephone conference. Pinnacle has substantially participated in the litigation process and thus has waived the right to arbitration. *See Porter v. Frank Cockrell Body Shop, Inc.*, No. CV 20-0050- CG-B, 2020 WL 4195001, at *2 (S.D. Ala. July 20, 2020) ("The mere act of filing the suit in federal court is inconsistent with an intent to arbitrate."); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908–10 (5th Cir. 2009) (finding that a plaintiff's "decision to file suit on her otherwise arbitrable claims constitutes substantial invocation of the judicial process"); *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir. 1995) ("[A]n election to proceed before

a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate.").

In arguing that it has not waived its right to arbitration, Pinnacle primarily relies on three cases: *Paragon Ltd., Inc. v. Boles*, 987 So. 2d 561 (Ala. 2007), *Hoover Gen. Contrs.-Homewood, Inc. v. Key*, 201 So. 3d 550, 551–52, 555 (Ala. 2016), and *Conseco Fin. Corp.-Ala. v. Salter*, 846 So. 2d 1077 (Ala. 2002). None of these cases are binding on this Court, as waiver is a question of federal law, nor are they persuasive. In *Paragon*, the Alabama Supreme Court held that a defendant contractor did not waive the right to compel arbitration by filing a lien against the property prior to demanding arbitration. *Paragon*, 987 So. 2d at 568. In so holding, the Alabama Supreme Court explained that merely filing a lien did not "manifest[] an intention to abandon the right to arbitrate in favor of the judicial process." *Id.* at 566. Similarly, in *Key*, the Alabama Supreme Court found that a defendant contractor did not waive the right to arbitration by filing a lien and counterclaims. *Key*, 201 So. 3d at 555.

Both *Paragon* and *Key* differ from the present case in two material ways: 1) they involve a defendant seeking to compel arbitration and 2) the defendants in these cases had only filed a lien in the Probate property records prior to demanding arbitration. In contrast, Pinnacle initiated this action by filing it, asserting twelve causes of action, and demanding a jury trial. Pinnacle argues that it "needed to also

file a Complaint in Circuit Court to protect its lien rights." (Doc. 19 ¶ 8.) But Pinnacle could have easily protected its lien rights by taking a cue from the *Paragon* and *Key* contractors and simply filing a lien. Instead, Pinnacle chose to avail itself of the "litigation machinery" of this Court. As a result, unlike the contractors in *Paragon* and *Key*, Pinnacle has waived arbitration.

*Conseco* provides Pinnacle with its strongest support; however, the Court is still not persuaded. In *Conseco*, the assignee of a contract filed an action against the assignor after the assignor was in default for not making the contractually required payments. *Conseco*, 846 So. 2d at 1079. Five months later, the assignee withdrew its claims and moved to compel arbitration of the remaining counterclaims. *Id.* at 1079–80. The Alabama Supreme Court found that the assignee did not waive its right to arbitrate, explaining that "the mere filing of a pleading does not constitute a waiver of the right to compel arbitration" and that the arbitration provision at issue specifically stated that initiating a judicial action would not amount to waiving arbitration. *Id.* at 1081; *see also IBI Group, Michigan, LLC v. Outokumpu Stainless USA, LLC*, 180 So. 3d 2, 6 (Ala. 2015) (explaining, in dicta, that *Conseco* stands for the proposition that a party may initiate litigation and not waive arbitration).

*Conseco* does not move the needle here for two reasons. First, unlike in *Conseco*, the arbitration provision in this case does not allow a party to seek a judicial forum and then to compel arbitration. Second, as explained above, the Court

finds it illogical that a party could file a lawsuit, participate in multiple Rule 26(f) conferences, begin discovery, and appear in a telephone conference before the Court, yet be found to not have "substantially participated litigation." Further, this Court is bound by the Eleventh Circuit on this issue. And Eleventh Circuit caselaw supports the conclusion that Pinnacle has waived arbitration. *See S & H Contractors, Inc.*, 906 F.2d at 1514. Consequently, Pinnacle has waived its right to arbitration.

### B. Matthews's Motion is due to be denied because he is not a signatory to the arbitration provision, and he is not entitled to compel arbitration under the doctrine of equitable estoppel.

Matthews asserts three theories as to why he can compel arbitration: 1) he is a signatory to the Agreement, and thus to the arbitration provision in the SOW; 2) as a nonsignatory, he can compel arbitration based on equitable estoppel; and 3) as a nonsignatory, he can compel arbitration based on his agency relationship with Pinnacle. The Court addresses each in turn.

"[I]n determining whether a binding [arbitration] agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "[A] nonparty may force arbitration 'if the relevant state contract law allows him to enforce the agreement' to arbitrate." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 1896, 1903 (2009)).

First, while Matthews technically signed the Agreement, and thus by incorporation the arbitration agreement in the SOW, Matthews signed on behalf of Pinnacle. (Doc. 3-7; Doc. 4-1 at 113.) Matthews relies on *Ex parte Isbell*, 708 So. 2d 571, 574 (Ala. 1997) for the contention that he is a "signatory" with the power to compel arbitration merely because he physically signed the Agreement. In *Ex parte Isbell*, the Alabama Supreme Court stated that an agent who signed a contract with an arbitration provision on behalf of his principal "in that sense" was a signatory. *Ex parte Isbell*, 708 So. at 574. However, as the Alabama Supreme Court later explained, this statement was "mere dictum." *Auvil v. Johnson*, 806 So. 2d 343, 348 (Ala. 2001). This is because the Court in *Ex parte Isbell* found that the question of whether the agent could compel arbitration was controlled by *Ex parte Gray*. *Ex parte Isbell*, 708 So. at 574. *Ex parte Gray*, and its progeny like *Ex parte Isbell*, are cases considering whether nonsignatories could compel arbitration under the doctrine of equitable estoppel. *Auvil*, 806 So. 2d at 348. Therefore, because *Ex parte Isbell* is an equitable estoppel case, it does not support Matthews's argument that he is a signatory.

As a corporate entity, Pinnacle cannot sign contracts. Rather, Pinnacle requires corporate officers like Matthews, its CEO, to sign contracts on its behalf. When a corporate officer signs a contract on the entity's behalf, the officer is acting as an agent of the entity. *See Callawy v. E. H. Smith Elec. Contractors, Inc.*, 814 So.

2d 893, 897 (Ala. Civ. App. 2001); *Harrell v. Reynolds Metals Co.*, 492 So. 2d 1381, 1389 (Ala. 1986). "An agent acting with actual or apparent authority who enters a contract on behalf of a principal binds the principal but not himself." *Lee v. YES of Russellville, Inc.*, 784 So. 2d 1022, 1027 (Ala. 2000). Here, Matthews explicitly signed the Agreement as the "CEO" of Pinnacle. (Doc. 3-7 at 4.) There has been no allegation that Matthews entered this agreement on Pinnacle's behalf without authority to do so. And the only counterclaim brought against Matthews is a fraud claim. (Doc. 3 at 49.) No party has ever contended that Matthews was personally bound by the terms of the Agreement. In contrast, SSC has brought a breach of contract counterclaim against Pinnacle, the entity that was bound by the contract. (*Id.* at 52.) Therefore, while Matthews technically signed the Agreement, he never bound himself personally to the Agreement. As such, he should not be considered a "signatory" with power to compel arbitration in this situation.

Regarding Matthews's equitable estoppel theory,[2] the parties dispute whether this doctrine applies. The general rule is that only signatories to an arbitration

---

[2] The parties colloquially refer to Matthews's theory as "equitable estoppel," as do many of the older cases they cite. However, the Alabama Supreme Court has since explained that there is "equitable estoppel" and there is "intertwining-claims theory," which is a "variation" of equitable estoppel. *See ECS, Inc. v. Goff Group, Inc.*, 880 So. 2d 1140, 1145 (Ala. 2003). Equitable estoppel, in the technical sense, applies when a signatory aims to compel a nonsignatory to arbitrate the nonsignatory's claims based on the underlying contract. *See Custom Performance, Inc. v. Dawson*, 57 So. 3d 90, 98 (Ala. 2010). In contrast, the intertwining claims doctrine applies where "a nonsignatory to an arbitration agreement may compel a signatory to arbitrate claims 'where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.'" *Id.* at 99 (*Conseco*

agreement are bound to that agreement. *See Locklear Auto. Grp., Inc. v. Hubbard*, 252 So. 3d 67, 85 (Ala. 2017). However, under the doctrine of equitable estoppel, "a nonsignatory can enforce an arbitration provision when the claims against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 380 (Ala. 2006) (quoting *Ex parte Stamey*, 776 So. 2d 85, 89 (Ala. 2000)).

Equitable estoppel requires that the language of the arbitration provision contemplates arbitration with the nonsignatory and that the arbitratable claims be intertwined with any nonarbitrable claims; however, neither of these preconditions are met in this case. *See Auvil*, 806 So. 2d at 350 (first citing *First Family Financial Servs., Inc. v. Rogers*, 736 So. 2d 553, 560 (Ala. 1999); then citing *S. Energy Homes, Inc. v. Kennedy*, 774 So.2d 540, 545 (Ala. 2000)). First, the Alabama Supreme Court has established that "unless the arbitration provision contains sufficiently broad language that indicates that the nonsignatory was contemplated as a party, . . . the nonsignatory lacks 'standing' to enforce the arbitration agreement." *Smithn*, 934 So. 2d at 380. "[I]f the language of the arbitration provision is party specific and the

_____

*Fin. Corp. v. Sharman*, 828 So. 2d 890, 893 (Ala. 2001)). Here, Matthews's theory for compelling arbitration is more accurately characterized as the "intertwining-claims doctrine" rather than equitable estoppel. But because the difference in these theories is not material in this case, and for the sake of consistency with the parties' and the Court's language in these older cases, the Court will refer to Matthews's theory as "equitable estoppel."

description of the parties does not include the nonsignatory, this Court's inquiry is at an end, and [the Court] will not permit arbitration." *Id.* at 381. Here, the arbitration agreement specifically states that "[a]ll claims, disputes and other matters in question between *Owner and Contractor* arising out of or relating to the Contract Documents" will be subject to arbitration. (Doc. 4-1 at 113 ¶ 16.01 (emphasis added).) The arbitration agreement further states that arbitration will not include any other person or entity unless that other person is necessary to the proceedings, there is a common question of law or fact, and the Owner and Contractor both consent to the inclusion. (*Id.* at 114 ¶ 16.04.) Thus, the arbitration agreement in this case is specifically confined to SSC, as the Owner, and Pinnacle, as the Contractor, unless they consent to arbitration with a third party. Pinnacle and Matthews have clearly not agreed to include Matthews in an arbitration proceeding. For this reason, Matthews cannot employ equitable estoppel.

Further, the intertwining requirement is not met because there will not be an arbitration proceeding between SSC and Pinnacle. As the Alabama Supreme Court has explained, "[t]he doctrine of intertwining extends the benefits of an arbitration agreement to a nonsignatory only if the claims against him are intertwined with the claims against a signatory who is going to arbitration." *Auvil*, 806 So. 2d at 350 (citing *Kennedy*, 774 So. 2d at 560); *see also Jenkins v. Aelier Homes, Inc.*, 62 So. 3d 504, 512 (Ala. 2010). Because Pinnacle has waived its right to arbitration, Pinnacle

and SSC will not be involved in an arbitration proceeding. Accordingly, the claims against Matthews will not be intertwined with arbitrable claims.

Lastly, Matthews argues that he can compel arbitration because he is an agent of Pinnacle. SSC disputes that Matthews is merely Pinnacle's agent, at least in terms of the nonarbitrable claims. (Doc. 24 at 19.) But even assuming he is, a nonsignatory cannot compel arbitration merely because he is an agent. Rather, the agency relationship is relevant to the equitable estoppel intertwining analysis, as nearly all of the cases Matthews cites in this section explain. *See Lewis v. Oakley*, 847 So. 2d 307, 328–29 (Ala. 2002); *Ex parte Stamey*, 776 So. 2d at 89; *Ex parte Napier*, 723 So. 2d 49, 53–54 (Ala. 1998); *MS Dealer Serv. Corp. v. Franklin*, 177 F. 3d 942 (11th Cir. 1999), *abrogated on other grounds by Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). For the cases that Matthews cites that do not explicitly connect the agency analysis to equitable estoppel, those cases are either third-party beneficiary cases or are premised on *Ex parte Gray*, which as earlier discussed, is an equitable estoppel case. *See Ga. Power Co. v. Partin*, 727 So. 2d 2, 6 (Ala. 1998); *see also Monsanto Co. v. Benton Farm*, 813 So. 2d 867, 874 (Ala. 2001); *Ex parte Stripling*, 649 So. 2d 1281, 1283–84 (Ala. 1996); *McDougle v. Silvernell*, 738 So. 2d 806, 809 (Ala. 1999). Therefore, even assuming Matthews is Pinnacle's agent, Matthews cannot compel arbitration under a free-standing agency theory and his Motion to Compel Arbitration is due to be denied.

## III.   CONCLUSION

For the reasons discussed above, Counter-Defendants' Motions to Dismiss or Stay and Compel Arbitration are DENIED. (Docs. 19, 23.) The Counter-Defendants are ORDERED to answer the counterclaims within ten (10) days of this Opinion. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on October 5, 2023.

_____
L. Scott Coogler
United States District Judge

215755